```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION

PAUL J. BRUNO,

              Plaintiff,

vs.                                   Case No.  2:06-cv-432-FtM-29SPC

SUSHMA PAREKH; JOHN MCCARDEL; KATHY
ROBERTS; CARRIE KILPATRICK,

              Defendants.
_____
```

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of Defendants' Amended Motion for Summary Judgment (Doc. #36, Mot. SJ.) and attached exhibits, including a copy of Plaintiff's medical record (Doc. #36-2, Exh. A) and an affidavit from a doctor, Sushma Parekh, at Moore Haven Correctional Institution (Doc. #36-3, Exh. B). Plaintiff filed a Response (Doc. #44, Response) and also attached exhibits, including some duplicate copies of Defendants' exhibits, grievances he filed concerning the issue raised in the action *sub judice* (Doc. #44-8, Exh. AA), and a petition for writ of mandamus that he filed in the state court (Doc. #44-7, Exh. BB).

**II.**

Plaintiff, who is proceeding *pro se* and incarcerated, initiated this action by filing a Civil Rights Complaint (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983. The Complaint names the

following Defendants from the medical department at Moore Haven Correctional Facility: Sushma Parekh (doctor, chief health officer); John McCardel (health services administrator); Kathy Roberts (nurse); and Carrie Kilpatrick (nurse) (generally referred to as "medical defendants"). Complaint at 1-2.

The Complaint alleges that the medical defendants violated Plaintiff's Eighth Amendment rights under the United States Constitution. See Complaint. Plaintiff states that the doctor from Calhoun Correctional Institution issued Plaintiff a "no-shave pass" for one-year after seeing his neck and face to become "raw and bloody (and extremely painful)" from daily shaving. Id. at 4. Plaintiff contends that medical officials from other DOC facilities, however, including the medical defendants from Moore Haven Correctional Facility ("MHCF"), refused to "renew" the permanent no-shave pass provided at Calhoun. See id. at 4-6 (listing other DOC facilities that refused to renew the no-shave pass including: Taylor Correctional, Charlotte Correctional, and Martin Correctional).

The Complaint alleges that Plaintiff filed a "sick-call" slip for the medical department upon his arrival at MHCF in October 2005 in order to request a no-shave pass. Id. at 6. Defendant Parekh, the doctor at MHCF, conducted the examination and did not issue the pass to Plaintiff. Id. at 6. The Complaint includes several other dates in which Plaintiff claims he went to the MHCF medical

department to request a no-shave pass because his face was irritated from shaving:

> January 3, 2006 Plaintiff saw Defendant Roberts, who cleaned his face with peroxide, and issued him a no-shave pass for seven (7) days. Id. at 6-7.
>
> February 13, 2006, Plaintiff saw Defendant Roberts, who did not issue Plaintiff a no-shave pass. Id. at 9.
>
> February 14, 2006, Defendant McCardel issued Plaintiff a no-shave pass for seven (7) days and discussed providing Plaintiff with a can of shave gel. Id.
>
> February 24, 2006, Plaintiff saw Defendant McCardel who did not renew the no-shave pass, but provided Plaintiff with a can of shave gel. Id. at 10.

Plaintiff further claims that the shave gel did not help his skin, so the medical department asked Plaintiff to return the shave gel. Id. at 11. Plaintiff explained that another inmate had the shave gel that medical had issued him. Id. at 11. A few days later, Plaintiff states that he received a disciplinary report ("DR") from the medical staff for lying to them. Id. Plaintiff, however, contends that the DR was written in "retaliation" because the medical staff knew Plaintiff had initiated a § 1983 action against another institution, Martin Correctional. Id. at 12. Although mentioned in the Complaint Plaintiff states that the "'bogus DR is a separate issue . . . and is being challenged in the Twentieth Judicial Circuit Court of Glades County Fl[orida]. . . . .'"[1]  Id. at 12; see Pl's Exh. at Doc. #44-7. As relief for the

---

[1] Plaintiff filed a "petition for writ of mandamus," case number 06-CV-94, concerning the alleged retaliatory DR in the Twentieth Judicial Circuit Court in
(continued...)

alleged deliberate indifference to Plaintiff's serious medical condition, Plaintiff seeks a declaratory judgment, compensatory damages, and punitive damages. Id. at 13-15.

Defendants argue in their motion for summary judgment that the skin discomfort Plaintiff experiences after shaving is not a serious medical need. Mot SJ at 12. Defendants also argue that they did not act with deliberate indifference to Plaintiff's medical needs. Mot. SJ at 13. The DOC's "technical instructions," specifically 15.02.16, permit the issuance of a no-shave pass if an inmate is diagnosed with either "pseudofolliculitis barbae" ("PFB"),[2] also known as "shaving bumps"; or, if an inmate is diagnosed with an infectious condition wherein irritation from shaving would impact the treatment of the condition. See Mot SJ at 8; Exh. B at 2.  In the second instance, where medical diagnoses the inmate with an infectious condition, a "temporary" no-shave pass is issued. Exh. B at 2. After evaluating and treating Plaintiff's skin on several occasions between October 3, 2005, and June 1, 2006, Dr. Parekh never found that Plaintiff exhibited the signs and symptoms of PFB. Exh. B at 2. For this reason, the medical department explains they did not issue Plaintiff a permanent no-shave pass. Id. Instead, Dr. Parekh opines that

---

[1](...continued)
Glades County, Florida. See Doc. #44-7. The state court denied the petition as untimely on April 10, 2008.

[2]PFB is an "inflammation of the skin when tightly coiled hairs cause irritation. This irritation can lead to permanent scars." Exh. B at 2.

Plaintiff's skin condition resulted from Plaintiff shaving too close. Id. at 2.

### III.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp. v. Catrett, 477 U.S. at 322;

Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

**IV.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under the color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268

F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). Here, the Complaint alleges an Eighth Amendment claim against medical defendants from MHCF.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. U.S. Amend. VIII; Estelle v. Gamble, 429 U.S. 97, 105 (1976). "[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle, 429 U.S. at 104); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris

v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

The Supreme Court has concluded that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic example of a matter for medical judgement." See Estelle, 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. See Harris, 941 F.2d at 1505.

## V.

In the case *sub judice*, the record establishes that there remains no question of material fact and Defendants' Motion for Summary Judgment is due to be granted. Based on a review of the record, the Court finds that the medical condition alleged in the Complaint does not constitute an "objectively serious medical need." The condition of Plaintiff's skin after shaving is not one that if left unattended, poses a substantial risk of serious harm. In particular, the Court finds convincing that even if Plaintiff was diagnosed with PFB, which he was not, the Eleventh Circuit Court of Appeals has ruled that PFB does not constitute a serious medical need. See Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986).

Moreover, the record shows that Defendants did not act with deliberate indifference to Plaintiff's condition. The medical records establish that the medical defendants saw Plaintiff on numerous occasions and despite Plaintiff's requests for a no-shave pass, his medical diagnosis did not require that medical issue him a permanent no-shave pass. The uncontested evidence in the medical records show that days after Plaintiff's transfer to MHCF, Plaintiff saw Dr. Parekh and requested a no-shave pass, explaining that "[he] get[s] cuts on [his] face on [sic] shaving." Dr. Parekh examined Plaintiff, found no cuts or rashes on his face, and did not issue Plaintiff a pass. Mot SJ at 5; Exh. A at 1, entry dated Oct. 4, 2005. On October 18, 2005, Plaintiff requested a shave pass, stating that his face is "bumped up." Dr. Parekh examined Plaintiff and found no rashes, but did note "'skin nicks' from close shaving." Mot. SJ at 5; Exh. A at 2. On October 26, 2005, Plaintiff again went to medical requesting a no-shave pass. Id. Defendant McCardel examined Plaintiff and denied the request for the pass. Id. On January 3, 2006, Defendant Roberts examined Plaintiff' face. Plaintiff stated that "he cut himself shaving." Mot. SJ at 5; Exh. A at 4. When Roberts asked Plaintiff why he continued to shave after he cut himself, Plaintiff stated because he wanted a no-shave pass. Mot. SJ at 6; Exh. A. at 4. A temporary no-shave pass was issued to Plaintiff by medical because of the bleeding. Exh. B at 3. On February 14, 2006, Plaintiff returned to the medical department and saw Defendant Roberts. Mot

SJ at 6; Exh. A at 7-8. Defendant Roberts treated and cleaned Plaintiff's face with hydrogen peroxide. Id., Exh. B at 3. Defendant Roberts' notes in the medical record indicated that Plaintiff's face was bleeding from lines the width of the razor on certain areas. Mot. SJ at 6; Exh. A at 8. The medical department then provided Plaintiff with the shave gel for sensitive skin. Id. at 8. On February 22, 2006, Plaintiff went to the medical department with scraped areas, again the length of the razor blade, on his face where the blood had dried. Exh. B at 3. Defendant Kilpatrick treated Plaintiff by cleaning his face with hydrogen peroxide and instructed him to reduce pressure while shaving. Exh. B at 3. Plaintiff concedes that the medical department provided him with temporary no-shave passes on two occasions. Response at 2. Plaintiff also acknowledges that Defendant McCardel "went way outside his scope of duties by bringing in from the 'streets' for Bruno a can of 'Edge Shaving Gel with Aloe for Sensitive Skin in an effort to curb some of [Bruno's] neck and facial shaving injuries." Id. at 2-3. Thus, the record before the Court evidences that the medical defendants saw Plaintiff each time he complained about his skin, evaluated Plaintiff, instructed Plaintiff, and, if necessary, treated Plaintiff's condition by providing two temporary no-shave passes and shaving gel for sensitive skin. See generally Exhs. A, B. It appears Plaintiff disagrees with the type of treatment rendered, as he maintains that he requires a permanent no-shave pass. Response at 1. As previously stated, however, a

disagreement with the type of treatment rendered does not state a § 1983 claim for deliberate indifference to a serious medical condition. See Harris, 941 F.2d at 1505. To the extent Plaintiff asserts in his Response that a correctional officer witnessed Plaintiff's shaving techniques were proper and wrote an incident report, Plaintiff did not produce this evidence and as such did not carry his burden at this stage of the proceedings. See Fischer v. Ellegood, 2007 WL 1624315, 238 Fed. Appx. 428, 432 (11th Cir. 2007)(stating bald assertions, statements, and "mere promises of 'affidavits and live testimony'" do not constitute evidence for purposes of the summary judgment stage of the proceedings).

The Complaint also alleges that Plaintiff was given a DR in "retaliation" for a previous § 1983 action he initiated against a different institution, Martin Correctional. Defendants testify that Plaintiff was written the DR because he "lied about using the shaving gel for sensitive skin." Exh. B at 3. Plaintiff does not come forward with any evidence to contradict Defendants' evidence and to support of his contention. Rather, in the Complaint Plaintiff asserts that the "bogus DR" is a **separate issue**, which he addressed in a state court action. Complaint at 12 (emphasis added). As such, the Court does not address any claim of retaliation.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Amended Motion for Summary Judgment (Doc. #36) is **GRANTED**.

2. The Clerk of Court shall: (1) terminate any pending motions; (2) enter judgment accordingly; (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __11th__ day of June, 2008.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record